## CALVERT v. CARY.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. CONTRACT—CONSIDERATION.

　　Where one renders services for a purchaser at tax sale, in making searches and giving notices to redeem, under an agreement that he shall be paid the statutory fees therefor when the property is redeemed, and the person redeeming has paid the fees, as he is required to, a subsequent agreement that he shall be paid therefor, on failure of redemption and the purchaser taking a deed, is without consideration.

2. SAME—PAYMENT FOR SERVICES.

　　Where services are rendered for a purchaser at tax sale, under agreement that the services shall be paid for when redemption is made, payment cannot be claimed on the purchaser taking a deed, on the ground that he had thus rendered redemption impossible, where he states that he is still willing to permit redemption, and there is no evidence of an offer to redeem.

　　Williams, J., dissenting.

Appeal from special term, Erie county.

Action by Adam R. Calvert against Thomas Cary. From a judgment and order of the supreme court modifying, and, as modified, affirming, a judgment of the municipal court of Buffalo for plaintiff, defendant appeals. Reversed.

The action was commenced in the municipal court of the city of Buffalo in January, 1899, to recover for services alleged to have been rendered to the defendant by one George E. Crane, the plaintiff's assignor. The defendant, by his answer, in effect denied the material allegations of the complaint, and alleged specifically that the compensation for services performed by the plaintiff's assignor, if any, had not become due and payable at the time of the commencement of the action. The issues were tried before a judge of the municipal court, and judgment was rendered in favor of the plaintiff for $261.28, damages and costs. From that judgment an appeal was taken to the special term of the supreme court, with the result that the judgment of the municipal court was modified by striking therefrom the sum of $30.98, and as so modified was affirmed, with $10 costs to the respondent.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

W. C. Miner, for appellant.
Calvin S. Crosser, for respondent.

McLENNAN, J. ' The charter of the city of Buffalo, being chapter 105 of the Laws of 1891, provides, in substance, that the comptroller, upon receiving from the treasurer a statement showing the real estate in said city upon which the taxes assessed are unpaid, may advertise and sell the same at public auction to the highest bidder; that any purchaser upon such sale is entitled to receive from the comptroller a certificate stating the amount of the taxes, expenses, and the amount of the purchase price paid; that at any time thereafter the owner or other person interested therein, except as hereinafter limited, may redeem such property upon paying the taxes, and all expenses and fees incurred and authorized by said act; that the purchaser of any property sold for taxes may limit the time in which such property may be redeemed by serving a notice upon the owner and all other persons interested therein, stating, in substance, that on or before a certain day named, not less than three months from the service of such notice, and not less than two years from the date of sale, the owner or persons interested may redeem such property, upon the payment of the purchase price and charges authorized by the charter, including the cost of making a title and tax search, showing the owner and interested parties, not to exceed $8.50, and 50 cents for each notice served, and 12 cents for the verification of the proof of service of each of said notices; and that, if redemption is not made on or before said time, the right to redeem will be forever foreclosed. The defendant for a number of years prior to 1895 had been in the habit of purchasing property sold upon tax sales in the city of Buffalo, and one George E. Crane, the plaintiff's assignor, had been employed at various times during those years by the defendant to make the searches and to serve the "redemption notices," so called. For all services so rendered to the defendant, prior to the year 1895, it is conceded that the plaintiff's assignor had been fully paid prior to the commencement of this action. At the tax sale in 1893 the defendant became the purchaser of 11 separate parcels of real estate, and certificates were issued to him as such purchaser by the comptroller. Crane, the plaintiff's assignor, during the year 1895, served all the notices affecting the 11 pieces of property above referred to, between 25 and 30 in each case. The plaintiff acted as commissioner of deeds, and the affidavit of service of each notice was made before him, for which he has not been compensated or paid by Crane, except by the assignment of the claim against the defendant. On one of the eleven pieces of property (Rose street) notices were served under the tax sales for the years 1889, 1890, 1891, 1892, and 1893. An original search upon such property for the year 1889 was made by Crane, for which he charged $8.50. A charge of $3 was made for a "continuation search," so called, made by him for each subsequent year, including 1893, and notices were served upon all and the same parties for each year. So that the entire charge for Crane's services in connection with that piece of property amounted to $49.10. Precisely the same amount and the same items were charged by Crane for services rendered in connection with the other Rose street property, which adjoined and was

owned by the same persons, and in which precisely the same parties were interested. It appears that the parties shown upon the two original searches were precisely the same, and that the continuation searches, so called, eight in number, for which $24 was charged, showed no change in the owners or persons interested in those two pieces of property. The total amount claimed by the plaintiff on account of Crane's services rendered in connection with those two pieces of property (Rose street) is $98.28. For the services relating to the two pieces of property designated as the "Tenth Street Property," a charge of $20.98 is made in each case, although it appears that the services rendered in connection with those two parcels of real estate were made necessary solely by Crane's neglect to serve one Ryan W. Martin, one of the persons interested, the previous year, when he served all the other parties interested in those premises, and for which he was paid in full before the commencement of this action. The entire claim of the plaintiff for the services rendered by Crane in connection with the 11 pieces of property amounts to $236.08, or an average of something over $21 for each parcel of real estate. It is conceded that no part of the real estate has been redeemed, and that no part of the amount charged for Crane's services has been paid to the defendant by any one.

The plaintiff's claim is that, under the agreement between defendant and Crane, the defendant became obligated, upon receiving deeds of the property in question, or upon becoming entitled to receive the same from the comptroller, to pay to Crane the amount charged for his services. The defendant claims that under the agreement between himself and Crane he did not become obligated to pay any sum or amount whatever until the property was redeemed, and he had been paid by the persons so redeeming the amount to which Crane was entitled for services rendered by him, under the provisions of the charter of the city of Buffalo. It therefore becomes necessary to examine the evidence to ascertain which contention is correct. Crane and the defendant were each equally well acquainted with the nature of the business, and the purpose for which the services were to be rendered, at the time the agreement was made. Crane, on direct examination, testified that in the early part of the year 1895 he had a conversation with the defendant, in which it was agreed that he (Crane) should make the searches and serve the notices in question, and that he was to be paid therefor by the defendant the fees allowed by law. On cross-examination the witness testified, after being asked by defendant's counsel to state the conversation carefully and slowly, as follows:

"The substance of the conversation was I agreed to do this work, and receive my fees when the property was redeemed. There were other conversations in connection with the matter, but I don't remember them. I wouldn't swear under oath just what it was."

Again the witness states:

"I recall making the agreement to do this work, and receive pay when the property was redeemed."

He was then asked by defendant's counsel:

"Q. Were you to receive any fees before it was redeemed? A. I don't see how I could. Q. Were you? A. Certainly not. Q. You say 'No'? A. No."

The witness, however, then answered the following question in the negative:

"Q. Was it not the distinct understanding between you and Mr. Cary, and has it not always been the distinct understanding since your first conversation with him, that you were not to receive one cent of pay until the property was actually redeemed, and the money paid to the comptroller,—to the comptroller for Mr. Cary,—including the costs? Hasn't that always been your understanding? A. No."

The witness also testified that since those services were rendered the defendant had made payment to him upon 25 different occasions for serving redemption notices where the property had been redeemed. On redirect examination the witness stated as follows:

"Q. Did he assent to your arrangement when you told him if he took deeds of the property you would look to him for the pay? A. Yes, sir; not only that, but he took deeds afterwards. Q. I understand you to say that you insisted to him that should be part of the original agreement? A. I insisted that he should pay me for them."

An examination of plaintiff's evidence fails to disclose any conversation between Crane and the defendant, prior to the time the services were rendered, which can be construed into an agreement on the part of the defendant to pay for Crane's services before the property should be redeemed. The defendant was called as a witness in his own behalf, and testified that the express agreement made between himself and Crane was that Crane should make the searches and serve the notices, and that he should not be paid anything therefor until the property was redeemed and Crane's fees paid to him (the defendant), or to the comptroller for him, upon such redemption. A Mr. Taylor, who was in the employ of the comptroller's office, testified that he had a conversation with Crane in regard to his claim against the defendant:

"I asked him [Crane] what arrangements he had in regard to paying taxes, and he told me that he was to receive his pay from all the tax script which Mr. Cary held when the parties owning the property redeemed. I asked him in reference to deeds taken, and he said that was another matter, and that was Mr. Cary's property then, and that was not considered. I think that is about the substance of the conversation."

The witness testified that he was present at a conversation between the defendant and Crane, at which Mr. Cary "told Crane that he very well understood that he was to have his pay when the people paid their taxes. Mr. Crane said that he understood that himself. He did not deny but that was the time he was to have his pay. He did not deny it, but on the property which Mr. Cary took deeds he claimed Mr. Cary was to pay." Mr. Herrington, at one time deputy comptroller of the city of Buffalo, was also called as a witness by the defendant. He states that Mr. Crane stated to him:

"I can just as well make these searches and serve these notices, and make what is to be made out of it. I have arranged with Cary [the defendant] to make these searches and services, and when people come in and pay up their taxes my expenses are added to the amount of the tax, and the money is paid to Mr. Cary, and then Mr. Cary gives me my check for my expenses."

The witness says that this conversation took place in May, June, or July, 1895.

The understanding or arrangement about receiving pay when deeds were taken by the defendant, referred to by Mr. Crane, if it has any foundation whatever, was concededly made after the contract was entered into under which the services were rendered, and after Crane had performed such services, and, so far as appears, there was no consideration to support such arrangement or new agreement. We think the evidence wholly fails to justify the conclusion that the services performed by Crane were rendered under or in pursuance of any other agreement or contract than that stated by the defendant, and also by Crane upon his cross-examination, to wit, that he (Crane) should make the searches and serve the redemption notices, and should receive pay for such services only when the property was redeemed, and the amount of his fees was paid to the defendant or to the comptroller by the persons redeeming the property.

It is suggested, however, that because the defendant, before the commencement of the action, had become entitled to and had received deeds of the property, which made him the owner in fee, he had put himself in a position where redemption could not be made, and therefore had rendered it impossible for Crane or his assignees to recover for services rendered. There is no such allegation in the complaint, and we think no such issue was tendered to the defendant; but, even if so, the defendant then ought to have been permitted to show that, notwithstanding he had become the owner of the property, he was still ready and willing to permit the same to be redeemed precisely as if no deeds had been taken by him. This the defendant offered to prove. The evidence was excluded upon plaintiff's objection, and defendant duly excepted. No proof was made on the part of the plaintiff showing, or tending to show, that any one had offered to redeem the property in question, or had offered to pay the amount of the purchase price upon the tax sales and the expenses connected therewith; so that the conclusion is reached that the evidence does not justify a recovery upon the theory that the defendant, by his own acts, has made performance of the contract between himself and Crane impossible.

The defendant testifies positively that only two deeds of the property in question were ever received by him from the city of Buffalo; that the others he did not receive, but that the title to the other property came through deeds received from the county treasurer. The defendant also testifies that, although he had made payments to Crane upon many occasions after the services alleged to have been performed by him had been rendered, he (Crane) never made any claim that he was entitled to receive compensation for the services which are involved in this action until shortly before the action was commenced.

The difference between the agreements contended for by the respective counsel is substantial. If the agreement is as contended for by the plaintiff, and the defendant had purchased at a tax sale a piece of property for a small amount, $5, $10, or $15, perchance

substantially its full value, Crane would have been authorized to make a search, and, if it disclosed several hundred persons who had liens upon or an interest in such property, to serve notices upon each one at a cost of 62 cents each, and demand the aggregate amount from the defendant when the time to redeem expired, whether redemption was made or not, so that hundreds of dollars might be added to the small sum bid for the property, and for which the defendant would be liable. As we have seen, in the case at bar, if the agreement is as contended for by plaintiff's counsel, the defendant obligated himself to pay $100 for services rendered in connection with only two of the pieces of property (Rose street) purchased by him, and with reference to those two pieces of property it appears that they were resold for taxes every year from 1889 down to and including 1893. They were not redeemed, and the defendant, who was the purchaser each year, failed to take a deed, preferring to take his chances of a purchase upon a resale rather than to perfect his title. There is nothing in the charter of the city of Buffalo which makes it obligatory upon a purchaser to accept or receive a deed after the time for redemption has expired. His entire obligation to the city ceases upon payment of the amount bid by him for the property. It undoubtedly was the expectation of both the defendant and Crane that the property in question would be redeemed. Then Crane would be entitled to receive full compensation for his services, and the defendant large interest for the money invested by him.

The defendant was undoubtedly entirely willing that Crane should receive the entire amount of fees and charges authorized by the charter of the city of Buffalo for the services rendered, if paid by the owners or persons interested in the property upon redeeming the same, but it is not reasonable to suppose that the defendant would obligate himself to pay such charges so largely in excess of the actual value of the services performed. The fees charged for the services rendered in connection with the two Rose street properties illustrate the unreasonableness of the agreement which the plaintiff claims was made. It is apparent that those services were actually worth but a few dollars, and that the defendant could have procured their performance for a comparatively small amount, yet the plaintiff contends that the defendant obligated himself unconditionally to pay to Crane $98.28 for such services. The conclusion is reached that a literal or liberal construction of the evidence does not establish such an obligation on the part of the defendant, and that an agreement such as the plaintiff insists was made would have been unreasonable, and one not likely to have been entered into between plaintiff's assignor and the defendant. It follows that the judgment and order appealed from should be reversed, with costs.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur, except WILLIAMS, J., who dissents.